The opinion of the court was delivered by
Tilghman, C. J.
This is an action on a sheriff’s bond, and the breach assigned, is, that the sheriff, (William Alexander,)' having received a sum of money proceeding from the sale of the land of Samuel Maxwell, by virtue of an execution on a judgment obtained against the said Maxwell, by G. and H. Fahnes-tock, out of which money the executors of Francis Gurney had a right to receive the amount of a judgment obtained by the said Gurney in his lifetime against William Patton, the said sheriff refused to pay them, but appropriated all the money in his hands to other purposes. The fact was, that the land of Maxwell, from the sale of which the money was raised, was the property of Patton, at the time when Gurney’s judgment against him was entered, and was afterwards purchased by Maxwell. There was no question, but Gurney’s judgment was a lien on this land; but the
*262 President -of the Court of Common Pleas, was of opinion, that on an execution against Maxwell, nothing but the rights of Maxwell could be sold, and therefore no part of the proceeds of that sale could be applied to any other purpose, than the discharge of judgments against Maxwell, and the surplus, if any, to be paid to Maxwell himself. . In other words, that the purchaser at the sheriff’s sale, took the land subject to Gurney’s judgment against Patton. I cannot assent to this opinion, because the principle on which it is founded, would work the most ruinous injustice, in all cases where the purchaser at a sheriff’s sale paid the full value of the land, and is, I think, contrary to ancient practice and express adjudication. It is a subject of very great importance, on which the opinions of lawyers have been discordant, and it is not my intention to enter further into, it, at present, than is necessary to decide the question before us, which does not appear to me to be attended with any difficulty. I grant, that Fahnestock's execution against Maxwell, commanded the sheriff to sell the right of Maxwell, and no more. But what was the right of Maxwell? He had a right to the fee simple, subject to all liens by virtue of judgments, either against himself or those under whom he claimed. The question is, then, whether the court will let in creditors who had obtained judgment's against Patton, under whom Maxwell claimed, to receive payment of their judgments out of the money raised on Fahnestock’s execution ? If the sheriff had sold the land, expressly subject to prior liens, the purchaser would have adapted his bid to the circumstances of the case, — he would not have bid the full value of the land, but its value, deducting the prior liens to which it was subject. But, if the sheriff sold without mention of prior liens, the purchaser would bid the full value, leaving it to the sheriff to make the legal appropriations of the purchase money. It is manifestly the interest of the debtor, that the purchaser should not be at the peril of satisfying prior incum-brances; because, under an embarrassment of that kind, the land would, in all probability, go off far below its value. And that, by long and general practice, the sheriff has taken on himself the ap-propriatipn of the money raised by the sale, and conveyed to the purchaser a title free from incumbrances, I have no doubt. In cases of difficulty, it has been usual to bring the money into court, and pray their direction as to the manner in which it is to be distributed. In the case of The Bank of North America v. Fitzsimons, 3 Binn. 358, it is said to have been “a practice of long standing in this state, when the sheriff sells land by virtue of an execution, to sell it for its full value, without regard to the lien of judgments, and to apply the purchase money to the discharge of these liens, according to their order.” And, in Semple v. Burd, 7 Serg. & Rawle, 290, the words of the court, were, “ that, on a sale by the sheriff, liens are paid according to their priority, without regard to their quality.” As to the objection against letting in *263 any person who was not a creditor of Maxwell, on a judgment and execution against Maxwell, it is. answered by express authority. In Nichols v. Posthlewaite, 2 Dall. 131, the case was, that A. devised land to B. charged with legacies. The land was sold on a judgment against B„ and it was held, that the proceeds of the sale should applied, in the first place, to the discharge of the legacies; — and, on the same principle, the judgment creditors of the testator, had there been any, must also have been let in. The reason for letting in third persons in this summary way, is to avoid expense and circuity of action. The prior judgment creditor is permitted to receive satisfaction out of a fund, upon which he could have come by suing out an execution for himself. If A. obtains judgment against B., who afterwards aliens, to C., A. may levy on the land in the possession of C. without being put to a scire facias against him. Young v. Taylor, 2 Binn. 228. I am of opinion, therefore, that Gurney's executors were entitled to satisfaction of their testator’s judgment out of the monej1 in the hands of the sheriff, raised by the sale of Maxwell's land on Fahnestock's execution. At the same time, I desire it to be understood, that 1 mean not to lay down any general rule, but eonfine my opinion to the case before the court. There may be questions between lien creditors, and particularly between mortgagees and judgment cre^ ditors, which I intend not to touch. They are of great importance, and I leave them to be decided as they arise.
But there is another question in this ease. There was evidence that Mr. Burnside was attorney for Gurney in his lifetime, and afterwards for his executors. When Maxwell was about to purchase from Patton, Burnside was pressed for a release of the lien on that land. This he positively refused to give, and, in consequence, Maxwell received from Patton, a bond with two sureties, to indemnify him against Gurney’s judgment. Afterwards, other lands of Patton were sold, by virtue of an execution on a judgment obtained against him by Philip Benner. Gurney's- judgment might have been paid out of the proceeds of this sale, but the' money ivas applied otherwise by Sheriff Rankin, with the knowledge of Mr. Burnside, who did not interfere, but abstained from doing'any act indicating his consent. It is proper to mention, that, at the time of this transaction, the stay of execution on Gurney's judgment had not expired. It is true, that after Patton had sold part of his land to Maxwell, the proper fund for the payment of Gurney's judgment was the remaining land of .Patton, which ought, in the first instance, to have been resorted to. ,And I should think it very clear, that if Gurney's attorney had given a positive consent to the arrangement made between Patton and others, as to the proceeds of the sale on Benner’s execution, it would be against equity that Gurney's executors should come on the land sold to Maxwell. I incline to think that the authority, of Mr. Burnside, who had no written power of attorney, and his *264 consent to the payment of the money raised on Benner’s execution, were facts proper to be submitted to the jury. And they were submitted, with the following instructions from the court:— “If, in this case, by the sale on Benner's judgment, an ample fund was raised to pay off all antecedent incumbrances, as well as the judgment in question, and the plaintiffs, by their agent, assented to that fund being paid over to William, Patton himself, and did not claim it when they had the legal right; and after the other fund had been transferred bona fide, and for a full and valuable consideration, to Maxwell, notwithstanding the stay of execution was not up at the time, on the judgment which is the subject of this suit, we say that such facts would justify the jury in saying, that the plaintiffs have relinquished their lien as against Samuel Maxwell.” I cannot say, that there is error in these instructions, though 1 think it would have been very proper to remark, that -Mr. Burnside’s positive refusal to give a release of the lien, and the bond of indemnity taken by Maxwell, were circumstances to which the jury should pay very serious attention. But they were not decisive, because it was possible, that although Mr. Burnside at one time refused to release the lien, he might, at another, have consented to a misappropriation of the money, which ought to have been applied to the satisfaction of Gurney’s judgment. Although the stay of execution had not expired, the money might have been brought into court, and kept until Gurney’s executors were entitled to call for it. A jury, however, should hare very strong proof, before they conclude, that one who had refused to release, had afterwards committed the interest of his clients by consenting to a misappropriation. Whether the jury took this part of the case into consideration, I know not. It was unnecessary that they should; because the court had instructed them, that, independently of this point, the plaintiffs, on their own statement of their case, had no right to recover.
I am of opinion, that the judgment should be reversed, and a venire de novo awarded.
Judgment reversed, and a venire facias de novo awarded.