## Luce *against* Snively.

When a plaintiff in ejectment who claims under a sheriff's sale, has given proof of an unsuccessful search for the deed in those places where it might rea-sonably be expected it would be found, the record of it in the common pleas may be read as the next best evidence.

A purchaser of land at sheriff's sale, sold as the property of the heir, takes it discharged from the lien, under the act of 1797, of the debts of the ancestor, although such sale be made within seven years after the death of the latter, and before any suits are instituted for such debts, or the evidence thereof is put on record.

The sheriff's responsibility may be avoided by paying the proceeds into court, where they are considered as substituted for the land ; and the creditors of the heir, and the heir himself, may be required to give bonds to refund, if necessary, within the time limited for liens on the land.

ERROR to *Butler* county. Special court. Shaler, president.

This was an action of ejectment, by Henry Snively against Ste-phen Luce. James Cunningham died seised of the land, having made his will, devising the same to his children, John, David, Sam-uel, Robert and Margaret Cunningham. Robert and Margaret died previously to 1808, intestate and without issue, leaving John, David and Samuel surviving them, against each of whom judgments were obtained, and each of their interests in the land in dispute was sepa-rately sold at sheriff's sale to John Purviance, under whom the plain-tiff claimed in the year 1808. Robert Cunningham died in 1807, and Janet Cunningham became his administratrix and settled an administration account in 1809, showing a balance due to her for debts of the intestate paid. She presented a petition to the orphan's court in 1810, for an order to sell the real estate of the intestate, (his interest in the land in dispute) for the payment of debts ; which was granted, and the same was sold, and the sale was confirmed to John Gilmore. The plaintiff gave evidence that search had been made for the deed of the sheriff to John Purviance for the interest of John Cunningham, where it might reasonably have been expected to be found, and that it had been lost or mislaid ; and then offered in evi-

[Luce v. Snively.]

dence the record of it in the court of common pleas, as the next best evidence. This was objected to, but the court overruled the objection and sealed a bill of exceptions.

The only questions which were argued in this court were, as to the opinion of the court in receiving the evidence of the record of the deed : and whether the sale of the estate, as the property of John, David and Samuel, after the death of Robert, divested it of the lien of the debts of Robert; or, whether those debts remained a lien upon it, and justified the sale of it by his administratrix and vested a good title in the purchaser. The court instructed the jury that the lien of the debts was divested by the sheriff's sale.

*Gilmore* and *Banks,* for plaintiff in error.
*Purviance* and *Mahon,* for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned cannot be sustained. The plaintiff had caused search and inquiry to be made after the deed itself, in those places and of those persons where and with whom it was most natural as well as reasonable to suppose that he would have found it if not lost or destroyed, or have gotten intelligence of it. He, however, failed in obtaining either. Then the record of the acknowledgement of the deed, being the next best evidence of the execution of it and of its contents, became admissible, in the absence of the deed itself.

The second error assigned, which is the only remaining one, raises the single question, whether a purchaser of land at sheriff's sale under an execution against one upon whom it descended in fee as heir at law, buys it discharged from the debts of the ancestor, when sold within seven years after the death of the latter, and before any suits are commenced for the recovery of such debts, or the evidence of them is put on record ? By a series of decisions on the subject a general rule has been laid down and established, that the party purchasing at a judicial sale fairly made, shall take and hold the land so sold, not only free from all existing liens for and on account of the debts of the person as whose estate it is sold, but free likewise from all liens for and on account of the debts of the previous owners of the land through, by and from whom he derived the legal right and title for it. To this general rule, however, there are some exceptions. Prior mortgages are made so by act of assembly. So where the nature of the prior lien consists of annual payments to be made for an uncertain length of time, and therefore such as to render the cash amount or value thereof incapable of being ascertained on account of the uncertainty of its duration, it must be considered as forming an exception ; as, for instance, where the land is charged with the annual payment of money, or other thing, for the support or maintenance of one or more persons during life ; or, with the annual payment of the interest upon one-third of the valuation money of the

[Luce v. Snively.]

land coming to the widow in certain cases of intestacy, in lieu of dower. Graff *v.* Smith's administrators, 1 *Dall.* 486, 501 ; Nichols *v.* Postlethwaite, 2 *Dall.* 131 ; Molierc's lessee *v.* Noe, 4 *Dall.* 450 ; Bank of North America *v.* Fitzsimons, 3 *Binn.* 358 ; Commonwealth *v.* Alexander, 14 *Serg. & Rawle* 257 ; Barnet *v.* Washbaugh, 16 *Serg. & Rawle* 410 ; Bank of Pennsylvania *v.* Winger, 1 *Rawle* 302 ; Willard *v.* Norris, 2 *Rawle* 56, 64, 65 ; Knaub *v.* Esseck, 2 *Watts* 281 ; M'Lanichan *v.* Wyant, 1 *Penns. Rep.* 162. It is contended, however, that in no case has it been decided that the purchaser shall take the land discharged from the debts of the ancestor, unless where they appear upon record ; so that the *sheriff,* or those upon whom the distribution of the money arising from the sale shall devolve, may be apprised of their existence and amount. Although it may be that in none of the cases decided has the question been raised directly in regard to a debt of the ancestor which had not been put on record, in some shape or other ; yet it falls directly within the principle, as well as the reason, upon which the decisions made on the subject are founded. The great object was to cause lands sold at judicial sales to bring their full value, if possible, and to prevent their being sacrificed by sales made for nominal or reduced prices, to the prejudice of both owners and creditors. But it is obvious that if the purchaser is not to take the land clear of the debts not placed on record, the court in making their decisions have done nothing whatever towards advancing the object mentioned : because with respect to the debts on record, every one intending to bid for the land could previously, by an inspection of the records, inform himself of the amount of such liens and regulate his bid accordingly ; but as to the debts not on record, it might be utterly impossible for him to ascertain any thing about them, whether there were any or not ; and in this state of uncertainty, not knowing but that there might be debts more than equal in amount to the value of the land, he would, therefore, if a prudent man, decline giving more than a mere nominal sum for it. Hence it is manifest that, for promoting the object which the court had in view, had it been proper to have made a distinction between debts placed on record and those withheld from it, the rules ought to have been the very reverse of what has been insisted on, to wit, that the purchaser should take the land discharged from the latter and subject to the former.

But it is objected that, as all the debts of a dying debtor become liens upon his real estate the instant he dies, and continued to be so under the act of 1797, for the space of seven years, but now reduced to five by a late act, such of the creditors of the deceased ancestor as have not put their claims on record must, in many cases, lose the security which the law has given for their payment, unless the land be sold subject to them ; that the execution creditor of the heir has a right to demand and receive his debt from the sheriff as soon as the sale of the land shall be perfected, unless the latter can show prior liens in amount sufficient to absorb the money

[Luce v. Snively.]

arising from the sale. But as the debts of the ancestor are not on record, he has not the means of knowing them, and therefore must either pay, or be exposed to the liability of paying them with the costs of a suit; and this being a responsibility which he cannot avoid, the inevitable consequence will thence be that the creditors of the ancestor must, occasionally, lose their debts, or the sheriff and his sureties will be exposed to the liability of paying the money arising from the sale of the land twice. The sheriff, it is true, may take upon himself the risk of distributing the sale money, if he pleases; and if he does, he does it no doubt at his peril and that of his sureties: but it is a misapprehension of the law to suppose that he cannot relieve himself from this responsibility; because he may, upon the receipt of the money, pursuant to the command to that effect contained in the writ, bring it into court, and pray the court to order and direct the distribution of it, which the court is bound to do; and thus discharge himself from all liability for any misapplication that may afterwards be made in distributing it. This course is pointed out by the act of assembly on this subject, and is in some degree regulated by it. Now it is easy to perceive that all the difficulty brought to view by this latter objection may be overcome, and the security which the law has given to the creditors of the ancestor be in effect preserved and maintained. For instance, the money when brought into court is to be considered as, or substituted for, the land sold; and the creditors of the heir, whose claims were liens upon it at the time of the sale, may be required to give security, before they shall receive their demands, to refund the same or so much thereof as may thereafter be wanting to satisfy debts which shall be made to appear against the ancestor within the time limited for the continuance of their being liens upon the land in case it had not been sold. So, after paying the creditors of the heir, if there be a surplus of the money remaining, the heir may be required to give the like security before he shall receive it. The security to be given in such cases ought, perhaps, to be real security, binding land of value equal at least with that sold. It is possible that in some instances the party required to give such security may be unable to meet it, and therefore may be delayed in receiving that which ultimately may turn out to be his due; but it is impracticable to lay down and carry into effect on this subject any rule that will, at the same time, secure to every one his just rights, and be entirely free from all difficulty and embarrassment in every case. The one mentioned, however, is believed to be as unexceptionable in this respect as any that can be conceived, and is certainly calculated to promote the interests of all concerned, debtors as well as creditors.

Judgment affirmed.