Tilghman.C. J.
briefly stated ilie facts, and then proceeded as follows : — The act of 1705, directs, that the lands shall be delivered to the plaintiff, “ until his debt be levied by a rea- “ sonable extent, in the same mannef and method as lairds “ are delivered upon writs of elegit in England.” It seems to have been the custom in England to extend lands at much less than their value; and although the courts of law are bound by the inquest, after the proceedings are returned and filed, yet it has been usual to grant relief in equity. An account will be ordered according to the actual profits. • With us it has been customary for the jury to make the valuation too high; the consequence of which has been, that in very few instances has possession been taken under a liberari facias. I will not say whether it would be in the power of the court to interfere, where the land was delivered under a lib. fa. and the plaintiff was permitted to retain the possession. That point has never been decided; nor is it necessary to decide it now, because the premises were taken from the plaintiff before his debt was satisfied. Under these circumstances, I have no doubt of the propriety of ordering an account according to the actual profits. The jury formed an estimate of the annual value, upon a supposition that the plaintiff, was to hold till his debt was satisfied,'and the plaintiff took possession on the same| supposition.' In most instances it is necessary to expend money in the beginning, in order to obtain the best income that may be had during the' whole term. Houses and mills my require repairs; land may stand in need of fences and manure; .and the necessary expenditures may be prudently made, on'a conviction that the annual value will thereby be so much increased as to reimburse the expenses with interest. To say then, that the possession may be taken from the plaintiff, during his term, allowing him no more than the value fixed by the jury, would be contrary to justice. It would not, in fact, be abiding by the extent, which was made with an eve to the whole term. There is no way of doing substantial justice, but by taking an account according to the real profits. By real profits I mean the profits that were, or might have been made, with due skill and diligence. If the plaintiff leases the premises clearly below their value ; or keeps them in his own hands, and through gross ignorance, negligence, or mismanagement, makes much less than he ought to have doije, he is responsi *324 ble for their reasonable value. I am of opinion therefore, that Smallwood's executors should account for the actual profitsj on t^ese principles.
There are some questions concerning costs, which we are called upon to decide. The sheriff has charged 13 dollars 50 cents, for the jury’s expenses, although they received the allowance prescribed by law for their attendance. This is wrong: The jury must pay their own. expenses. He has likewise charged 4 dollars for his own attendance, for which there is no warrant in the table of fees. Of course this charge must be struck out. But the principal dispute is about the sheriff’s poundage. The former sheriff charged poundage upon Smallwood's debt, when he made the levy and executed the liberari facias; — this, was undoubtedly right. The act of assembly gives poundage upon the whole debt, ££ for selling lands levied upon, or delivering them to the cre- ££ ditor, and making return.” (Act 20th April, 1795. 3 Sm. L. 255). But then comes the present sheriff and charges poundage also on Smallwood's debt, so that in fact the estate of Lloyd pays double poundage on the same debt. This is so oppressive, that nothing less than positive law can justify it. The act of assembly provides, that no poundage shall be paid for more than the real debt in the execution. Now the execution under which the property was sold, was at the suit of Wall, and not of Smallwood., so that Smallwood's debt is not strictly within the law. I know that by the practice of this Court, sheriffs have been allowed poundage on all the money '¡they pay, not only for satisfaction of the debt of the plaintiff in the execution, but also of other judgments by which the land was bound. But this practice appears to me- to have been introduced by way of giving the sheriff a quantum meruit for services not provided for by law. It seems to have been an extension of the law, for the purpose of doing justice to the sheriff. Upon that principle, the sheriff cannot complain if he receives a quantum meruit. Now this property was sold for 17,000 dollars, from which, if Smallwood's debt is deducted, the poundage on the balance yields a very ample compensation, for poundage will be due on the whole balance, the whole being paid away in satisfaction of different judgments. Thus the law will be satisfied, and justice done to the officers. I am therefore of opinion, that on Wall's *325 'execution no poundage is to be charged on the debt of Small-wood.
Yeates J.
Such a case as the present cannot occur in England. There, lands are not sold by the sheriff under an execution, but one moiety of the defendant’s lands by metes and bounds, is delivered to the plaintiff, under an elegit; a jury having previously ascertained the clear yearly rents and profits thereof. Upon a second execution coming to the sheriff’s hands, he proceeds to extend one moiety of the residue of the defendant’s lands, in the same manner, and the same mode is pursued on all subsequent executions.
But our act of 1705, makes essential alterations in pre-: scribing the manner of taking lands in execution for payment of debts. Where there is a deficiency of personal estate to pay debts, upon a judgment and execution obtained, the lands of the debtor may not be sold, when it is found by a jury, that they may yield yearly rents or profits sufficient to pay the debt and costs, beyond all reprizes within the space of seven years. In such case, the lands shall be delivered to the plaintiff in the execution, until the debt be levied by a reasonable extent. But by section 3d of the act, it is provided, “ that if before the extent be out, any other “ debts or damages shall be recovered against the same “ debtor, which, with what remains due upon such extent, “ cannot all be satisfied out of the yearly profits of the lands c< extended within seven years, the sheriff shall certify the “ same upon the return of the executions, whereupon a writ “ or writs of venditioni exponas shall issue forth to sell such “ lands, for and towards satisfaction of what shall so remain “ due upon such extent, as also towards satisfaction of all the “ rest of the said debts or damages.
We shall look in vain for cases in the English books, wherein the creditor to whom lands have been delivered on an elegit, has objected to the quantum of rent ascertained by the jurors ; because we learn from Serjeant Williams's note in Underhill v. Devereux, (2 Saund. 72,) that lands in that kingdom are generally extended much below their value, whereas our own experience teaches us, that the inquisitions of jurors, amongst ourselves, usually rate the rents and profits of lands submitted to their consideration, much above their value. ' Still it would seem, that, if the creditor takes posses *326 sion of the lands under the liberari facias, and holds them "until his debt and costs are satisfied, according to the value of the rents and profits fixed by the inquisition, he would be concluded thereby, and this, doctrine has been explicitly admitted to be correct, by the counsel for the creditor on the liberari facias. I think, however, there is a plain and obvious distinction between such a case and the one before us, where a plaintiff has been dispossessed of the land, by a sheriff’s sale before the extent is out. The jurors would naturally take into consideration what yearly rents and profits the lands may yield, (in the language of the act,) and estimate the time when the debt and costs might be satisfied. It seldom happens, that an unfortunate and embarrassed debtor, subjected to a liberari facias, and against whom there are other impending judgments, has either funds or inclination to put his mills, houses, or lands in' good order. The creditor who receives possession must necessarily be at expense- in repairing the buildings, making fences, and putting the land in a proper state of cultivation, for which he expects to be remunerated at a future day by the increased profits. In such a state of things, no one can deny that gross injustice would be done, if the plaintiff was to be removed from the land in 12 or' 15 months, and be charged with the yearly rent fixed by the jury. The plain right of the case would be, that he should credit the debtor with the nett profits which he might have made out of the property, by his reasonable exertions.
I am therefore of opinion, that to do complete justice between the contending parties, an issue should be formed or referees appointed, (if the parties will agree thereto), to ascertain the sum, which the rents and profits of the property levied on, might yield during the interval which the executors of Isaac Smallwood had possession thereof, by their reasonable efforts, without negligence or default on their part, and that the same be deducted from the amount of the debt recovered; and this I apprehend would be decreed in equity in a case so circumstanced. An incidental question has been agitated as to the sheriff’s poundage. Isaac Cochran filled the office of sheriff of Delaware county,' when the liberari facias was executed. He obeyed the injunctions of that writ, held an inquisition and delivered the grist and saw-mills to Small-wood, until the debt, interest, and costs in that suit should be fully *327 paid. ■. Having performed the services enjoined on him, he is clearly entitled to the compensation prescribed by the act of 20th April, 1795, by the provisions whereof we are bound, in the present instance. His demand cannot legally be impaired by any matter ex post facto.
Daniel Thompson sold the lands in question under a venditioni exponas, returnable to July Term, 1814, at the suit of John Wall, and demands poundage for the several judgment debts which he has paid according to law: The three-several judgments were obtained against the executors of Lloyd, and therefore the priority of their entry gains no preference, which here only is obtained by the dignity of the several debts. Where these debts are equal in point of dignity the creditors will take pro rata. The sheriff was bound to appropriate the money arising on the sales according to law. If doubts are entertained in what manner the money is to be applied, he may bring it into court according to the command of the writ, and pray the court to direct its application for his security. In this instance, distinct sheriffs have performed different duties, and the law has fixed their respective remuneration. This Court has determined in Peiry y. Beauvarlet, 1 Binn. 97, that the construction of the act of 20th April, 1795, uniformly has been to allow the sheriff poundage upon the payment of all prior judgments and mortgages. And I take it, that the uniform practice for fifty years past, has been, that the sheriff has been allowed poundage for all debts which he has duly paid on sales: And his risk and trouble is precisely the same, whether he has one or more writs of venditioni exponas in his hands. Hard as the case may be on the estate of Isaac Lloyd, conceiving myself bound to decide in this instance by a general rule, F can see no reason for disallowing sheriff Thompson’s charge of poundage. I agree with the chief justice, as to the other particulars of his charges.
Brackenridge J.' concurred with the chief justice in toto.
Jí. B. There were three judgments against the executors of Isaac Lloyd, all obtained after his decease. One by Smallwood’s executors, on a specialty; one by John Wall on simple contract, under which the estate was sold on a venditioni ex-ponas; and one by Sparks on simple contract; who issued a fi.fa. and levied, on the premises at the same time witii John Watt. The property was condemned on both executions, though no venditioni was issued except in the case of John Wall.