The opinion of the Court was delivered by
Duncan J.
The facts as they appear from the opinion filed, are briefly these. The bond on which the action was brought, was given in part'payment of a tract of land, sold by Burd to Semple, a conveyance of the land made, and possession delivered. A mortgage wds given to Burd, to secure the unsatisfied purchase • money, which he neglected to put on record within six months. A judgment was afterwards obtained by Dunning McNair against James Semple. The land was sold by the Sheriff to Ross and Wilkins, for its full value, *289 which did not discharge the judgment. Burd moved the Court to have the proceeds of the sale applied to his mortgage, which was refused, and they were applied towards the -discharge of the judgment. After this, a new agreement was made between Semple and M*Hair--, by which Sempie was released from the balance still remaining due on M‘Hair’s judgment, upwards of eight thousand dollars, and^ received back- a part of the land on very favourable terms. All this was done by the agency of Ross and Wilkins, who to protect themselves, purchased the whole interest of James Burd, and on the 10th September, 1810, paid him the full amount of his debt, and interest. . On the trial, the following points were made by the defendant below, the plaintiff in error, (his honour read them from the paper book,) ori which the Court gave their, opinion. It is .to be understood, that though the first point was reserved, and no opinion given on it until after the verdict, yet by the agreement of the parties, it is evident, that it was to be considered as if given in charge . to the jury, so that either party might bring a writ of error.
This point deserves and has received great consideration ; for though there are many cases in which incidental opinions have been given, yet there has been no direct judgment. At a late session of this Court, the question was very fully-discussed, and an opinion expressed coinciding with that given in-this case, “that an unrecorded’mortgage was not a lien opposed to a subsequent judgment,” yet it was not the direct matter in judgment. Kauffelt v. Bower, ante, 64.
A judgment in this State, in its operation, differs in many, and very important respects, from judgments in England. Lands here are considered chattels and assets for. payment of debts, and may be sold on execution. A judgment here, does not bind after purchased lands ; there, it does. Here, by a sale on a.judgment, the right of dower is extinguished j there, the right of dower is not impaired either by judgment or mortgage. Here, it is a lien on every kind of -equitable interest in land the debtor held at the time of judgment; there, it only binds the legal estate. In treating of the effects of a judgment, we cannot apply to them the principles, of the common law. The .state and condition of the country, the difference of circumstances between a young-country and an old settled country, will always introduce new doctrines, *290 adapted to the state of society and property; and although tjje comrnon law .generally is binding, yet many of its'doctrines,/ particularly the feudal doctrines of investiture and alienation, have been departed from in oilr modes of acquiring and transferring, lands.
• -Any difference of opinion .that may have existed, has arisen from not discriminating the consequences of not recording- a mortgage, and an absolute conveyance. In the case of a mortgage; no estate passes, unless the deed is repord'ed within six months ; and however the instrument may operate on the mortgagor, yet, as to third persons, as the law condemns it, and, declares it a nhllity, it cannot be susceptible of any effect. But very different is it where the conveyance is,absolute; there the law does,not declare it null, the estate passes ; it is declared void only against subsequent purchasers, or morgagees, for valuable consideration. A judgment for the term of five years; equally binds the lands of a debtor, as a mortgage does ; comes in on a sale, by the Sheriff,'equally with a. recorded mortgage ; they are paid according to their priority, without regard'to their quality.
In England, a man is supposed to lend money not on the view of the coghisor’s real estate; the judgment is there not, a specific lien on the land ; the creditor is supposed not to go on the security of, the' land, but trusts to the general, credit of the debtor, and his estate.' 1 P, Wms. 278, 2d 492. 2 Ves. 622. But in Pennsylvania, a creditor relies on the real, estate always as a fund, arid where he takes a judgment bond, with a stay of execution,-as the sole fund, in which he confides.' Colhoun v. Snider, 6 Binn. 145. And even in England, where one advances' money on the credit of a judgment, he stands in a different situation from a general judgment creditor; for in,equity he is-considered quasi a purchaser, or mortgagee. Prec. in Chan. 478. The jud'griient ‘gives the creditor a general lien ; the mortgage, a specific one.' This is the only difference;' for a mortgage is but a security for the debt specific and limited ; the judgment unlimited ; the securities are equal there is no priority. .
There is a recognition of the principle, that an unrecorded mortgage is rio lien against a'subsequent judgment, a legislative construction that, it does nót- exist, that it shall not operate, in the Act of 23d September, l?^. That Act pro *291 vides, that all mortgages executed between the 1st June, 1776, and 18th June, 1778, which have been recorded, or which shall be recorded, within six months after the passage of the Act, shall be as good and effectual in law, as if they had been recorded within the limited time, but with this exception; “thatthey shall not operate against any subsequent judgment or lien whatever;” Now' if unrecorded mortgages prevailed against subsequent judgments, the provision was nugatory, and the exception retrospective, impairing the lien, which the unrecorded mortgage held against a subsequent-judgment. And by the.laite Act off 28th March, 1820, the sense of- the Legislature' is further evidenced. The Act declares, that no mortgage or defeasible deed, in-nature of a mortgage, shall be a lien until süch. mortgage or defeasible deed is recorded, or left at the office for- record, except only in the case of a mortgage for the purchase money of the land mortgaged, whose lien is' not to be affected, by the Act, if the same is recorded within sixty days after execution. If recorded within .the time limited it has relation’to the execution; if not, then' with all other mortgages, it has only relation to the day of entry. The prevailing object of the Legislature, has uniformly been, to support; the security of a judgment creditor, by confirming his lien, except when-It interferes with-the circulation of property by-embarrassing a fair purchaser. So far as the question has been, mooted, judicial opinion, has always been in. conformity to' the -sanie principle. The case of Levinz v. Will, 1 Dall. 430, and Parker and another v. Wood, 437, are strong evidences judicial understanding. For in- the first,, though the decision was, that an unrecorded mortgage was good against the mortgagor, the Court thought that if it was riot good as mortgage, yet it was binding- on the mortgagor, as another species of conveyance, a covenant to stand, seised to uses. But the true' reason, without resorting to any other construction of the instrument was, that, it injured. no ,one; affected not the rights of any other third person, and was binding on. the man who executed it, as a mortgage. And in the latter, it was admitted by all the 9ou‘nsel and the Court, that a subsequent judgment in a common case, would prevail against an unrecorded mortgage, and' the ground ken, (and it was impregnable ground,) to uphold the mortgag e was, that the mortgagee having caused it to be ente *292 red oil the record book, though the office of recorder was vacated by the declaration of independence, was doing all the párty could do, during the interregnum to give notice ; it never was imagined by the counsel, it never entered in the mind of the Court, that the lien was preserved, for then no debate would have arisen in them; the Court would at once have decided on that ground; but all' admitted the lien was gone, if there had existed an office in which the mortgage could have been'Illegally recorded. The case of Tuthill’s Lessee v. Dubois, 4 Johns. 216, in New York, was decided on the local statute concerning mortgages, which provides that no mortgage shall defeat or prejudice the title or interest of any bona fide purchaser, unless duly registered. Before the statute, there was nó necessity of registering mortgages; since the statute, they must be registered or lose their priority as to junior mortgagees, or bona fide purchasers prior to .the registry.' The principle on which this decision was made was, that the statute requiring the registry, confined its operation on unregistered mortgages, to the' two cases of subsequent mortgagees, and bona fide purchasers, leaving the lien, to rést as to judgments, as if the statute had never been made. The unregistered mortgage and conveyance are. provided for in the same mariner. The consequences of not. registering are limited to the two cases ; but herein the different consequences of not recording a mortgage, and not recording a conveyance, are distinctly marked ; they do hot rest on the same footing. In the one, no estate passes; in the other, the estate does'pass, against all but subsequent mortgagees and purchasers. The declared sense of the Legislature, the opinion of professional men, the Common understanding of the Courts, and these are safe rules by which to fix the construction of an ancient law, and experience the best and safest test of ahv rule of construction^ all unite to prove, that a mortgage not recorded within the time limited by law, ■ will not prevail against a subsequent judgment. TJiere was no error in the decision of the Court on that point, for an unrecorded mortgage is not alien as to judgment creditors. It is to be observed, that when I speak of the lien by mortgage unrecorded becoming extinct, it is meant a mortgage not recorded within six months,'for if it is so recorded, the lien relates to the- execution. A mortgage not recorded within the six months has no lien by relation, but it is a lien from the entry *293 on the record, and obtains against a judgment entered subse- , ’ - J quent thereto.
If then, an .unrecorded mortgage taken' for the.purchase mctaey of land sold, does'not hold a lien on the. land, a fortiori a nude bond could not; for that would be giving to a mere personal security, which is a lieh by implication only; a greater- force and a higher privilege, than to. an unrecorded mortgage, which was given as a real security; and giving to a simple unprivileged obligation, the same effect as a recorded mortgage; and declaring that while a mortgage should lose its hold, if not. recorded within ; a limited time, the bond which it was given to secure, should retain it to an unlimited time, than which nothing could be more irrational. But this was decided in the cáse of Kauffelt v. Bower, already referred to, (ante, 64,) where this Court determined'the broad principle that a vendor who had given a conveyance and a receipt for. the purchase money, and delivered' possession, but who had taken .bonds for an unsatisfied portion of it, retained no lien upon the. land, and' that a purchaser on a judgment against the vendee", held the land disr charged of the unsatisfied purchase money, and the Sheriff could, not pay over' the proceeds of the sale to the vendor, but must pay them' to the judgment creditors. On this point, the opinion of the Court was right. . v - ■
But in truth, I cannot see how the decision of the question in any way could absolve the defendant from the obligation to pay this bond. The controversy was not between the mortgagee, or the vendor and the judgment creditor; by accepting the release from McNair, he ratified the sale, .he confirmed the application .of the money arising from it, and he is not now to be received to contradict, it,v even had he a superior interest, and an original right to require its application to the debt of Burd.. He has himself applied it to the payment of one debt, he shall not now recall it, and insist on its application to another; he shall not have it doubled to pay his debts. •
There stood no legal impediment in the way of James Burds had he continued the party in interest, his right to recover could not be questioned. How then.pan'it be impeached in the hands of Ross and 'Wilkins; what taint has it received in its transit to thepi ? If such-taint existed, it has not been *294 pointed out. It is beyond my vision to .discover, or understanding to comprehend, what there is against conscience in the demand of payment; if . the obligation originally was valid, When we consider the manner and the purpose for which they .obtained it, it lost nothing of its binding effect by the assignment. The s.ale to them was at its full value, the defendant’s debt was paid by it,.he avails himself of ; the appropriation ; 'obtains by the . agency of Ross and Wilkins, a release of the large balance still1 remaining, and through them on favourable1 terms, obtained back a portion of his estate which had been sold,. What injury has he1 to complain of, .what scintilla of equity to plead. If M'-Nair’s debt had1 not been paid by the sale, he would, have remained M'-Nair’s. debtor.. What difference can it'make to him, whether he is called on to pay M'-Nair’s debt or Burd’s debt; if Burd’s real security was lost by his neglect, the personal security1 still remained ; if the mortgage lost its lien on the land, the bond did not lose its binding effect: the- personal security by the bond was- not destroyed by any act of the parti.es, or extinguished by/operation of law. '.Why sh.ould it- be, that he should not pay for this land? The title was good, he enjoyed the full benefit of his purchase; the mortgage, though hot recorded, bound him, the bond bound him, the land went .to pay, his debts. . It lies not in the mouth of the defendant, to say tó Burd, “ the land which I bought from you1, I sold (or which is the same thing, the Sheriff sold it,) for its full value.. You lost your security by your own neglect of the land, and could not obtain payment from that fund, and because you have done so, and because your land has gone to pay my other debts, it is iniquitous for you to demand, the price of .yopr land.” As little does it lié in his.mouth to say. to the assignees of Burd, “you have aided me in my distress ; by your agency I was relieved from the large balance still due to M'-Nair; by your means, I got back on good terms a good part of my estate, which had béen sold to pay my debts; and because you have.done this, though this was a great debt of Burd’s, for which, you have paid the full amount, yet I will not pay you.” This would be a most unaccountable equity. To sum up ' all in a few words,Semple has not paid the debt, it was not extinguished by operation of law or act of the parties.' Burd could have *295 coerced payment. Ross and Wilkins have paid to the uttermost farthing; they stand in the'áhoes of Burd. The defendant is not prejudiced by any ac.t of theirs,’he. was bound to pay it to Burd, he is bound to pay it to those .who have ac-1 ' ■ ■ quired his' right. •
Judgment affirmed.
Gibson J. gave no opinion; having been sick and absent at the argument. >• ' ■’