[Sunbury, July 3, 1829.]

2 R    56
30 SC 2105|    WILLARD and another *against* NORRIS and another.

IN ERROR.

When land, subject to a mortgage, is sold under a judgment, obtained subse- quently to the execution and recording of the mortgage, the purchaser at sheriff's sale, takes the land discharged of the lien of the mortgage.

It is not error to permit a *Scire Facias*, to revive a judgment to be amended, even after the plea of *nul tiel record* pleaded.

UPON a writ of error to the Court of Common Pleas of *Tioga* county, the case was thus:—

On the 22d of *December*, 1815, *Lyman Adams* purchased of *Elias Boudinot*, a tract of land in *Tioga* township, *Tioga* county, containing one hundred and seventy-six acres and fifty-nine perches, which he mortgaged on the same day to *Joseph P. Norris* and *David Lenox*, to secure four hundred and ninety-three dollars and eighty- three cents, the purchase money. *Robert Tubbs,* for the use of *John Joseph*, recovered a judgment against *Lyman Adams* and others, for sixty-six dollars and thirteen cents, before *John Ryan,* Esq., a justice of the peace for *Tioga* county, on the 17th of *July*, 1817, which was entered on the docket of the Court of Common Pleas of *Tioga* county, for the purpose of binding the real estate of the defendants, on the 28th day of *April*, 1819; and the land pur- chased of *Elias Boudinot*, and mortgaged to *Joseph P. Norris* and *David Lenox*, was levied upon by virtue of a writ of *Fieri Facias,* issued upon it to *May* Term, 1819. The mortgage to *Norris* and *Lenox;* was recorded on the 25th of *June*, 1819; but this fact ap- peared only by the certificate of the recorder, for it is not alleged in any of the pleadings in the case, that the mortgage was upon re-

(Willard and another *v.* Norris and another.)

cord, nor was it given in evidence in the court below, so far as appears by the record.    *Norris* and *Lenox* issued a *Scire Facias* upon the mortgage to them, and on the 19th of *September*, 1822, obtained judgment in the Court of Common Pleas of *Tioga* county, of *September* Term, 1822, against *Adams;* and on the 22d of *September*, 1825, they issued a *Scire Facias, post annum et diem,* against *Adams,* to revive the judgment obtained on the 19th of *September*, 1822.

*Bartlett Seely* obtained judgment in the Common Pleas of *Tioga* county, on the 19th of *August,* 1826, against *Lyman Adams* and others, and under the execution issued upon this judgment, *Adams's* land, so as aforesaid mortgaged to *Norris* and *Lenox,* was sold on the 19th of *December*, 1826, to *William Willard,* Jr., to. whom, on the 17th of *February,* 1827, the sheriff, in open court, and after proclamation, acknowledged a deed.    On the 21st of *September*, 1827, the money arising from the sale to *Willard,* was ordered by the court, after a hearing, to be paid over to the holder of the judgment obtained by *Tubbs,* before the mortgage to *Norris* and *Lenox* was recorded.

Judgment by default was entered in the action of *Scire Facias post annum et diem,* brought by *Norris* and *Lenox,* on the 21st of *December*, 1827, and a *Levari Facias* was issued to *February* Term, 1828, to sell the land in possession of *William Willard,* Jr.; but upon his application, the default was set aside, and *Willard* was admitted as a co-defendant in the action.    *Willard,* then, severally pleaded *nul tiel record;* upon which issue was joined on the 18th of *February,* 1829.    *Willard,* also, on the same day, pleaded the following plea:—

"*William Willard,* Jr. for a further plea in this behalf, by leave of the court here for this purpose first had and obtained, according to the form of the statute, in such case made and provided, saith, that the said *Joseph P. Norris,* who sued with the said *David Lenox,* since deceased, ought not to have execution of a certain tract of land in *Tioga* township, in the said county, containing one hundred and seventy-six acres, and fifty-nine perches; purchased by the said *Lyman Adams,* of *Elias Boudinot,* on the 22d day of *December*, 1815, now in the possession of the said *William Willard,* Jr., by his tenant, *Andrew Pickard,* being the same land described in a *Scire Facias,* upon a mortgage to secure the purchase money of the said land, issued to *December* Term, 1821; because he says, that heretofore, to wit, on the 15th day of *February,* 1819, a transcript of a judgment, for the sum of sixty-six dollars, and thirteen cents, in favour of *Robert Tubbs,* for the use of *John Joseph,* against the said *Leyman Adams, James Cowt,* and *Benajah Ives,* rendered by *John Ryan,* Esquire, on the 23d day of *July,* 1817, then one of the commonwealth's justices of the peace, in and for the county of *Tioga,* aforesaid, was entered on the docket of the Court of Common Pleas, of the said county, for the purpose of

(Willard and another *v.* Norris and another.)

binding the real estate of the said defendants, for the said debt and costs, according to law: That afterwards, to wit, on the 28th day of *April,* 1819, it was so proceeded by the said court on the said transcript of a judgment, that the said tract of land, and appurtenances, were levied on the sheriff of *Tioga* county, by virtue of a certain writ of *Fieri Facias,* issued on the said judgment, returnable to *May* Term, in the year last aforesaid, as by the record and proceedings in the said suit in the said court remaining will more fully appear: That afterwards, to wit, on the 19th day of *August,* 1826, *Bartlett Seely,* assignee of *Elijah Stiles,* Esq., by the consideration of the Court of Common Pleas of *Tioga* county, recovered a judgment against the said *Lyman Adams, Jeremiah Brown,* and *Pliny Power,* for the sum of one hundred and fifty-six dollars, and eighty-two cents, together with costs. That it was so proceeded, on the said judgment, by the said court, that the sheriff of *Tioga* county, by virtue of certain writs of *Fieri Facias,* and *Venditioni Exponas,* afterwards, to wit, on the 19th day of *December,* 1826, after giving legal and timely notice, exposed the said tract to public vendue, and sold the same to *William Willard,* Jr., for the sum of fifty dollars, he being the highest bidder, and that the best price bidden for the same: That afterwards, to wit, on the 17th day of *February,* 1827, after due proclamation made, *John Beecher,* Esq., then the said high sheriff of the said county, acknowledged his deed to the said *William Willard,* Jr., for the said tract of land, in open court, according to law. That afterwards, to wit, on the 21st day of *September,* in the year last aforesaid, the said Court of Common Pleas, pursuant to the statute, in such case made and provided, ordered the money raised by the said sheriff, arising from the said sale of the said tract of land, to be paid over to the said *Robert Tubbs,* for the use of *John Joseph,* to be applied to the said judgment, in his favour, against the said *Lyman Adams, James Cowt,* and *Benjamin Ives;* all which, by the records and proceeding in the said court remaining, will more fully appear. And the said *William Willard,* Jr. in fact saith, that the said *Lyman Adams* hath acquired no right whatever in the said tract of land, since the levy and sale last aforesaid. And this the said *William Willard,* Jr. is ready to verify. Wherefore he prays judgment, &c."

To this plea, there was the following replication:—

"And the said plaintiff, &c. as to so much of the second plea, by the said defendant, *William Willard,* Jr. pleaded, as alleges, 'that the said *Joseph P. Norris,* who sued with *David Lenox,* since deceased, ought not to have execution of a certain tract of land in *Tioga* township, in the said county, containing one hundred and seventy-six acres, and fifty-nine perches, purchased by the said *Lyman Adams,* of *Elias Boudinot,* on the 22d day of *December,* 1815, now in the possession of *William Willard,* by his tenant, *Andrew B. Pickard,*' saith, that the said plaintiff ought to have execution

(Willard and another *v.* Norris and another.)

of the land described in the *Scire Facias,* issued to obtain the judgment upon which his action in this behalf is founded; because he says, that those lands are the same which *Lyman Adams* bought of *Elias Boudinot,* and received a deed for the same, of *Joseph P. Norris,* and *David Lenox,* the attorneys in fact of the said *Elias Boudinot,* who forthwith took of the said *Lyman Adams* a mortgage for the consideration, or purchase money, of the said land; upon which said mortgage the original judgment in this behalf was obtained. And the said plaintiff claims execution of no lands other than those described in the said mortgage. All which he is ready to verify, &c."

To this replication, the defendant *Willard* demurred, and the plaintiff joined in demurrer. On the 18th of *February,* 1829, on motion of the plaintiff's attorney, the court permitted the *Scire Facias* to be amended, so as properly to recite the judgment of *September* Term, 1822, instead of *December,* 1821, which had been inserted.

In *May,* 1829, after argument, the court below gave judgment for the plaintiff, *Norris,* on the demurrer, and on the issue of *nul tiel record;* to which opinion the defendant, *Willard,* excepted, and took his writ of error.

The errors assigned in this court were, that the court below erred:—

1. In allowing the *Scire Facias* to be amended, so as to recite a judgment of a different term from the one first recited.

2. In deciding, that the land sold by the sheriff to *Willard,* was, under the circumstances disclosed in his plea, liable to be again sold at the suit of a mortgagee, whose mortgage was not recorded within the period required by law; upon which, judgment had been obtained, prior to the sheriff's sale.

3. In deciding, that a judgment on a *Scire Facias,* upon a mortgage of a particular tract of land, was a general judgment against the person, and all the goods, chattels, lands, and tenements, of the mortgagor, upon which a general execution might issue.

4. In deciding, that the plaintiff's replication to the special plea of the defendant, *Willard,* was sufficient.

*Lewis,* for the plaintiffs in error.—The important question on this record is, whether the sale on the judgment did not extinguish the mortgage, as against the purchaser of the land, and substitute the fund raised by the land itself; out of which fund, all incumbrances were to be paid, according to their priority. In this case, the money raised by the sale went to a judgment creditor; against whom, this mortgage, not recorded until after his judgment was obtained, was a nullity. *Semple* v. *Burd,* 7 *Serg. & Rawle,* 286. In *Pennsylvania,* land can never be subject to more than one judicial sale, upon incumbrances of any kind, existing at the time of such sale; and hence, though a creditor may have several securities, such as a bond, and a mortgage, and judgments on them, he cannot sell

(Willard and another *v*, Norris and another.)

the land twice. 9 *Serg. & Rawle*, 304. "By the uniform practice
of this state, both before and since the Revolution, no difference is
effected by sales being had under early or late mortgages or judg-
ments. A *Venditioni Exponas*, under a late judgment, has al-
ways been considered a sufficient authority to the sheriff to sell
lands discharged from former incumbrances, even though intermedi-
ate judgments could not be paid off on the actual sale." *Per Lewis,
arguendo*, 2 *Yeates*, 45. *Per* TILGHMAN, C. J. 3 *Binn.* 358.
Whatever may be the doctrine in *England*, here, the mortgagor,
as regards third persons, and even as regards the mortgagee, is
deemed the owner of the land: he is seized of the *legal estate*, and
the mortgage is but an incumbrance. The extent to which the
principle has been carried by our courts, may be collected from
*The President, &c. of the Schuylkill Navigation Company* v.
*Thoburn*, 7 *Serg. & Rawle*, 411. It is true, that the mortgagee
may maintain ejectment; and, in consequence of the defective or-
ganization of our courts, his administrator, or the assignee of his
administrator, may do so; but that is between the parties them-
selves. *Simpson's Lessee* v. *Ammons*, 1 *Binn.* 175. Here, the
question is between third persons, one of whom is a *bona fide* pur-
chaser under a judicial sale, not bound to look to the application of
the purchase money. The case of *Febiger's Lessee* v. *Craighead*,
a short and imperfect note of which is to be found in 4 *Dall. Rep.*
151, but which is fully reported, 2 *Yeates*, 42, was the case of a mort-
gage to the Trustees of the Loan Office, under the act of assembly,
of *February*, 26th, 1773, (*Prov. Laws*, 478, *sect.* 16,) the provi-
sions of which secured a priority, and preserved the lien, notwith-
standing the sale under a subsequent judgment. So by *consent* of
the purchaser the lien may remain. *Stackpole* v. *Glassford*,
16 *Serg. & Rawle*, 163. But, if it be conceded, that a mortgage
is but an incumbrance on land as against third persons, then the
question in this case is settled by *Nichols* v. *Postlethwaite*, 2 *Dall.*
131, and *Barnet* v. *Washebaugh*, 16 *Serg. & Rawle*, 410, in
which cases it was decided, that, where a legacy is charged upon
land, the sheriff's vendee under a judgment obtained against the
devisee of the land, takes the land discharged of the lien of the le-
gacy, and the legatee must look to the proceeds of sale, in the
sheriff's hands. The reasoning of the court in this case is con-
clusive.

As to the other point, a *Scire Facias* is not in general amendable;
and it is never so where advantage has been taken of an error in it,
by pleading *nul tiel record*. 2 *Tidd*, (*Farr. Edit.*) 1036, 1037,
note, (*d.*)

*Williston* and *Mallory*, for the defendant in error, were
desired by the court to speak only to the question, whether the
mortgage was discharged by the sale. They argued, that a mort-
gage creates a specific lien upon land, indefinite in its duration,
and is so far from being a mere incumbrance, that in a court of

(Willard and another *v.* Norris and another.)

law it has never been considered as any thing but a conveyance of the land itself. The mortgagor has parted with his legal title as between himself and the mortgagee; and it is contrary to good faith, as well as a legal anomaly, to permit him who has created a specific lien, and parted with his legal estate in order to do so, indirectly to procure a sale of the land, and defeat his creditor, by the subsequent creation of a mere incumbrance. All confidence in mortgages, as securities, will be destroyed, by such a decision; and it is well known, that immense sums have been loaned in the city of *Philadelphia,* where these mortgagees lived, and elsewhere, upon the faith of the opinion, that they remained liens upon land sold under subsequent judgments. It is true, that, because money has been raised by a pledge, the owner of the land, or chattel pledged, does not, therefore, cease to have power to borrow more, or create other liens upon it; but the only mode by which the subsequent creditor can secure himself is, to pay off the prior lien; and hence, in *England,* where there are several mortgages, on the same estate, one behind another, the order in which the mortgagees will be let in to redeem is, that the second do redeem the first, the third the second, and so on.* "The principle is believed to be universal," says MARSHALL, C. J. (*Rankin* v. *Scott,* 12 *Wheat.* 179.) "that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced, by some act of the party holding it, which shall postpone him in a court of law or equity, to a subsequent claimant. Take the common case of mortgages. It has never been supposed, that a subsequent mortgagee could, by obtaining and executing a decree for the sale of the mortgaged premises, obtain precedence over a prior mortgage, in which all the requisites of the law had been observed. If such decree should be made, without preserving the rights of the prior mortgagee, the property would remain subject to those rights in the hands of the purchaser." Chief Justice TILGHMAN, in *Moliere's Lessee* v. *Noe,* 4 *Dall.* 450, was of opinion, and Judges YEATES and BRACKENRIDGE concurred with him, that, under a sale by order of the Orphan's Court, for the payment of debts, though the purchaser took the land discharged from the lien of *judgments,* yet, that a *mortgage* "stood upon a different footing from judgments, because the mortgagee is, strictly speaking, the owner of the land, and may recover it in ejectment; the mortgagor has no more than an equity of redemption; and the Orphans' Court has not power to sell a greater estate than he is possessed of." And the ground upon which he refused to interfere, to assist the mortgagee to take the amount of his mortgage, out of the money in court, in *Patterson* v. *Sample,* 4 *Yeates,* 308, where lands subject to a prior mortgage had been sold under a subsequent judgment, was, because "the mortgagee had a plain and simple remedy

---

* See *Patch's Law of Mortgages,* 192.

(Willard and another *v.* Norris and another.)

on the mortgage." In this opinion, Judge BRACKENRIDGE united
with him; and Judge SMITH openly stated his opinion to be, "that
no sale under a later judgment, can affect prior judgments, unless
they are fully paid by the sale." Judge BRACKENRIDGE never gave
up his opinion; which, he says, was that of Chief Justice SHIPPEN,
and has left his protest against the doctrine now contended for.
*Law Miscellanies*, 258. Judge YEATES, it is true, did not go so
far (2 *Binn.* 218, 4 *Yeates*, 316,) as the other judges. *Febiger's
Lessee* v. *Craighead*, 2 *Yeates*, 42, 4 *Dall.* 151; is a direct autho-
rity, that a mortgage does remain a lien on land sold under a subse-
quent judgment; for the provisions of the act of assembly, of *Feb-
ruary* 26, 1773, gave no greater estate to the trustee of the Loan
Office, than passes to every mortgagee; to wit, the fee simple, sub-
ject to a condition. Mr. *Dallas's* report of it shows how the de-
cision was understood when it was made. The uniform practice
stated by Mr. *Lewis* in Judge YEATES's report of that case was de-
nied by Mr. *Ingersoll*, who asserted *then*, what we *now* say is the
law.

The legislature seem to have been impressed with the same idea;
for though they have interfered and restricted the lien of judgments,
they have left mortgages upon their original footing. Nor is a
mortgage given before, but recorded after a judgment is confessed,
to be treated by the judgment creditor as a nullity, and, where he
has notice of it, he must so regulate his sale as not to prejudice the
mortgagee. *Muse* v. *Letterman*, 13 *Serg. & Rawle*, 167. The
practice of permitting a younger judgment creditor to sell, and ap-
ply the fund, is but a more direct mode of permitting him to redeem
a prior incumbrance to save himself. He has a right to pay off the
prior liens, and repay himself out of the land; which being ultimate-
ly responsible to all creditors in their order, by our practice is ren-
dered immediately available; the principle of equity being, that the
party, or fund, *ultimately* liable to pay, equity renders *immediately*
liable. *Nichols* v. *Posthlewaite*, was but a *Nisi Prius* decision, only
reported in *Dallas's Reports;* and the point there and in *Barnet*
v. *Washebaugh*, was different from that now before the court. The
party who owned the land sold under the judgments did not create
himself the prior lien. In *Nichols* v. *Posthlewaite*, the money was
in court to pay the legacy, if a lien, which was the sole question;
there was nothing decided, nor any decision called for, as to what
the condition of the purchaser was, after the sale; and though the
decision, upon the facts, in *Barnet* v. *Washebaugh*, the report of
which is very unsatisfactory, is right, yet the opinion of the court
there delivered was uncalled for; as a very different principle would
have prevented the plaintiff's recovery in that case.

The opinion of the court (HUSTON, J. being sick, and absent,) was
delivered by

TOD, J.—The record presents the following case:—In *Septem-*

(Willard and another *v.* Norris and another.)

*ber*, 1822, *Lenox* and *Norris* obtained a judgment against *Lyman Adams* in *Scire Facias*, upon a mortgage, executed by *Adams* to them. This mortgage, though executed on the 22d of *December*, 1815, was admitted not to have been recorded until the 25th of *June*, 1819. In *September*, 1825, *Lenox* and *Norris* brought the present action of *Scire Facias*, to revive their said judgment, *post annum et diem.* After there had been judgment by default against *Adams*, in this *second Scire Facias*, *Willard* moved the court to open the judgment, and let him, *Willard*, into a defence, which was done. The two defendants then, pleaded separately, *nul tiel record*, upon which issues were joined. *Willard* also pleaded a further plea, in which, and in the replication to it, all the facts of this case are contained.

[His Honour here read *Willard's* plea, and the plaintiffs' replication.]

To this replication, the defendant, *Willard*, demurred generally, and the plaintiff joined in demurrer. The judgment of the court was in favour of the plaintiff below, and the defendant took this writ of error, and now assigns the following errors:—

[His Honour here read the errors assigned.]

In the second writ of *Scire Facias*, there was a mistake in reciting the term of the original judgment; which the court, on the request of the plaintiff below, permitted him to amend. This amendment, and the decision of the court upon the plea of *nul tiel record*, produced a bill of exceptions from *Willard's* counsel; but the first error assigned, has not been insisted upon here in argument, and we dismiss the matter at once; being of opinion, that the court clearly had the power to permit the amendment of the *Scire Facias.*

The judgment on the first *Scire Facias* was confessed by the defendant, *Lyman Adams*, on the 17th of *September*, 1822. The amount of it was settled at three hundred and thirty-six dollars and sixty-three and a half cents. The mortgage produced was of the date already mentioned, to secure payment of a bond of nine hundred and eighty-seven dollars and sixty-six cents, conditioned for the payment of four hundred and ninety-three dollars and eighty-three cents. On what day, or from what time interest was to be paid, does not appear. Thus it appears, that the judgment, upon which the land was sold by the sheriff, was subsequent to the recording of the mortgage of the plaintiff below; but the judgment, towards satisfaction of which, the money was applied by the sheriff, was prior to the mortgage. There was judgment entered on the mortgage long prior to the sale by the sheriff, and against that sheriff's sale there was no allegation of fraud. As to the distinction which has been made, depending upon the fact, that though the land was actually sold upon a later judgment, yet that the money raised by the sale was appropriated to a judgment entered prior to the recording of the mortgage, it was not much pressed in the ar-

(Willard and another *v.* Norris and another.)

gument, and we shall not rely upon it in the decision. Then, on this general demurrer, the question comes up directly, whether the title of a prior mortgagee, and the lien of his mortgage, are devested and extinguished by a sale of the land under a younger judgment. Perhaps it is a question which now comes for the first time before this court for a direct decision. Yet, I apprehend, that incidentally and indirectly, it has often arisen, and often been decided. I have endeavoured to make a collection of all the cases bearing upon the subject, from *Yeates* and *Binney's Reports,* to *Barnet* v. *Washebaugh,* 16 *Serg. & Rawle,* 410. Most of these cases were cited in the argument.

In *Petry* v. *Beauvarlet,* 1 *Binn.* 97, decided in 1804, there was a rule on the sheriff to bring money into court, to which he made return, "that with the money he had paid off several *judgments and mortgages* upon the premises sold, which being *prior* to the judgment in this case, were entitled to prior satisfaction; and, that he had charged a poundage upon the different sums so paid."

*Per Curiam.*—"The construction of that clause, (viz. of the fee bill,) has uniformly allowed to the sheriff poundage upon the payment of all *prior judgments and mortgages.* He must, therefore, take his costs."

That this decision was accordant with the sense of the community and of the bar, is strongly shown by the case of *Browne* v. *Browne,* 1 *Browne's Rep.* 97, where some contested items in a sheriff's bill of costs were referred to two gentlemen among the most practical and experienced of the profession. The sheriff had sold land under the act of assembly of the 11th of *April,* 1799, after the execution of a writ of partition. Objection was made to an item of ten dollars and some cents, charged and paid by the sheriff for *searches of judgments and mortgages.* The referees approved the charge, and gave these reasons:—"It appears to us necessary, for the sheriff's security, to make these searches, as he could not safely distribute the money arising from the sale among the parties without ascertaining what liens are upon the estate. We have no doubt, that the sheriff is entitled to a reasonable and proper allowance for the trouble, risk, and responsibility, in performing this duty; and we can perceive no difference in any of these respects, between such a sale as this, and a sale under judgment and execution. This opinion seems to be sanctioned by the case of *Petry* v. *Beauvarlet,* in the Supreme Court, wherein the court allowed poundage to the sheriff on the payment of the *judgments and mortgages* prior to the judgment and execution on which the defendant's land was sold, although the fee bill declares, that no poundage shall be paid for more than the real debt, and also declares it to be illegal for any officer to demand greater fees than are specified in the act of assembly, for any service to be done by him; but does not notice the poundage on payment of such *judgments and mortgages* prior to the plaintiff who sells." This award was confirmed by the court, with the

approbation of all, as far as appears.  Even though this case should not be held as a precedent in law, yet it seems to me, nothing can more clearly show how notorious is the rule, that in every judicial sale in *Pennsylvania*, the land goes to the purchaser clear of all liens of *judgments and mortgages*, and that out of the purchase money, the sheriff, at his own risk, is to pay off all those liens, according to their priority, insomuch, though the act of assembly, about partition, makes no mention of liens, yet by mere analogy, drawn from the notorious usuage of the commonwealth, an allowance was adjudged, in this case, to the sheriff, for the fees paid for searches of *judgments and mortgages*, the owners of which might afterwards call upon him for their money.  I refer also to *Shoemaker* v. *Houtford*, 1 *Browne's Rep.* 251.

In the case of *The Bank of N. America* v. *Fitzsimons*, 3 *Binn.* 358, Tilghman, C. J. says, "it has been a practice of long standing in this state, where the sheriff sells land by virtue of an execution to sell it for its full value, and apply the money to the discharge of those liens."  The consequence was, that the sheriff retained the money in his hands till he could ascertain the amount of old judgments.  In *Wall* v. *Lloyd's Executors*, 1 *Serg. & Rawle*, 320, Tilghman, C. J. says, "I know, that by the practice of this court, sheriffs have been allowed poundage out of the money they pay, not only for the satisfaction of the debt of the plaintiff in the execution, but also of other judgments by which the land was bound."  And in the same case, Yeates, J. says, "This court has determined, *Petry* v. *Beauvarlet*, 1 *Binn.* 97, that the construction of the act of assembly of the 25th of *April*, 1795, uniformly has been, to allow the sheriff poundage upon all prior *judgments and mortgages*.  And I take it, that the uniform practice for fifty years past, has been, that the sheriff has been allowed poundage for *all debts* which he has paid on sales."  The case of *Nichols* v. *Postlethwaite*, 2 *Dall.* 131, would, I apprehend, if any question were yet remaining as to the usage of *Pennsylvania*, requiring all liens to be paid on sheriffs' sales, end the doubt.  There it was expressly decided, that legacies charged by will, on lands sold by the sheriff on a subsequent judgment, should be paid out of the purchase money, which goes far beyond any payment of a prior mortgage.  It is argued, that this is but a *Nisi Prius* decision, and that the same case is not at all mentioned in *Yeates's Reports*.  As to authority, the judges appear to have been Bradford and Shippen; and Judge Yeates reported no decision, made at a circuit where he did not attend.  Besides, the decision in *Nichols* v. *Postlethwaite*, is cited with express approbation by Duncan, J. in *Gause* v. *Wiley*, 4 *Serg. & Rawle*, 535, by Tilghman, C. J. in *The Commonmealth* v. *Alexander*, 14 *Serg. & Rawle*, 263, and by the whole court in *Barnet* v. *Washebaugh*, 16 *Serg. & Rawle*, 413, in which the very same point was decided. It appears difficult to state any reason why prior legacies shall be paid out of monies raised by a sheriff's sale of the land on which

(Willard and others *v.* Norris and others.)

they are charged, and yet, that prior judgments, or prior mortgages, shall not be paid.

I am not aware of any decision of this court, contradicting the usage which has been mentioned, and which, I think, there is reason to believe, has existed in this state, beyond the memory of man. The incidental *dicta* of the judges, however, have varied very much indeed. Judge YEATES seems to have taken the lead in support of what he deemed the ancient usage; and his reasons, which may be found in the case of *Keen* v. *Swaine et al.* 3 *Yeates*, 561, cannot, in my opinion, be easily and satisfactorily answered. Judge BRACKENRIDGE was foremost on the other side. On every occasion he seems to have declared his mind unequivocally, that by a sheriff's sale of lands, all prior liens, whether judgments or mortgages, are left wholly untouched; and he gives his reasons most fully in his *Miscellanies, page* 258; and from some of the *dicta* in the books from the judges incidentally, it seems probable, that one or more of them were of the same opinion with BRACKENRIDGE, J. But this, it appears to me, could not have lasted long. In the case of *Patterson* v. *Sample,* 4 *Yeates,* 308, there was a mortgage, and the land having been sold under a subsequent judgment, there was an application by the mortgagee to receive his money from the sheriff. The case was heard before SMITH, J., and the only ground upon which that judge seems to have placed the case was, the recording of the mortgage deed within six months. The later cases on the subject are still more conclusive. In *The Commonwealth* v. *Alexander,* 14 *Serg. & Rawle,* 257, it was decided, TILGHMAN, C. J., pronouncing the opinion of the court, not only that a prior judgment was to be paid out of the purchase money accruing from a sheriff's sale, but that a judgment still older, and against another person, who had been the preceding owner of the land, should also be paid. Then, as to mortgages; in *M'Call* v. *Lenox,* 9 *Serg. & Rawle,* 302, the land was sold on a judgment. Without any question, as far as appears, the money was applied by the sheriff to the satisfaction of a mortgage, and the residue as far as it would go, to a second mortgage, both mortgages *being* prior to the judgment. The last two cases are full of other matter, leading, as it seems to me, to the same conclusion. That a mortgage is but a record evidence of a debt, and entitled on this question to no prerogative whatever above a judgment, independent of the express authorities cited, I refer to *Wentz and Wife* v. *De Haven,* 1 *Serg. & Rawle,* 312, and *Porter's Executor* v. *Neff,* 11 *Serg. & Rawle,* 223. Other cases might be cited to the same purport, but it seems to be unnecessary.

Judgment reversed, and judgment for the plaintiffs in error on the demurrer.