## JAMES B. M'GREW *against* MATTHEW M'LANAHAN, and SIMON DRUM.

When land is sold upon a judgment, the sheriff must appropriate the money arising from the sale to existing liens, according to their priority, and convey to the purchaser a title free from incumbrances.

When a judgment is obtained upon one of several bonds which were secured by a mortgage, and an execution issued thereon, upon which the mortgaged premises are levied, and afterwards sold upon a venditioni exponas, before the mortgage is due, the purchaser takes the land discharged of the lien of the mortgage.

THIS was an appeal from the decision of HUSTON, J. at a circuit court, held for Westmoreland county.

*Mathew M'Lanahan,* one of the defendants, being the owner of a tract of land, on the 15th of April, 1815, executed a mortgage thereon, to secure the payment of eight bonds to *William Campbell,* bearing even date with the said mortgage, and each conditioned for the payment of three hundred and fifty dollars, on the 15th April, in each year thereafter, until the whole should be paid. The mortgage was recorded on the 24th January, 1817. On the 15th April, 1817, two of the mortgage bonds being due, *William Campbell* brought separate suits thereon against *Matthew M'Lanahan,* in the common pleas of Westmoreland county, to August term, 1817, and obtained judgments; writs of *fieri facias,* were issued to the next term, which were levied upon the mortgaged premises; an inquisition thereon held, and the same condemned: whereupon to November term, 1818, a *venditioni exponas* issued, and the land was sold to *Simon Drum,* the other defendant, for six hundred and fifty dollars, who on the 17th February, 1819, received the sheriff's deed therefor.

After the mortgage became due, a *scire facias* was issued thereon to August term, 1824, upon which judgment was obtained on the 21st October, 1824, for two thousand and fifty-nine dollars

(James B. M'Grew *v.* Matthew M'Lanahan and Simon Drum.)

and thirty-nine cents; a *levari facias* was issued to February term, 1825, and the land was sold to *James B. M'Grew*, the plaintiff, who was also the assignee of the mortgage, for fifteen hundred dollars, who received the sheriff's deed for the same on the 23d February, 1825.

It also appeared that the six hundred and fifty dollars, paid by *Simon Drum*, was more than sufficient to pay the judgments of *William Campbell*, upon which it was sold, and a small balance thereof was paid to *Matthew M'Lanahan*, the mortgagor, and *Simon Drum*, the purchaser, under the judgments obtained on the mortgage bonds.

Under the direction of the court, the jury found a verdict for the defendants. A motion was made for a new trial:

1st. Because the court erred in instructing the jury that the sale made to *Simon Drum*, upon the judgments, discharged the lien of the mortgage.

2d. Because the court directed the jury that they ought to find for the defendants, whereas their verdict ought to have been for the plaintiff.

Which motion was overruled, and the plaintiff appealed.

In this court the cause was argued by *A. C. Foster* and *Coulter* for appellant.—The cases of *Nichols* v. *Postlethwaite*, 2 *Yeates' Rep.* 131, and *Gurney's Executors* v. *Alexander*, 14 *Serg. & Rawle*, 257, establish the principle, that not only judgments against the defendant whose land is sold, but also against his vendor, and even legacies must be paid by the sheriff, out of the proceeds of the sale. But to this rule it is apprehended there are exceptions. If a junior judgment creditor sells lands sufficient to pay all prior judgments, there can be no good objection from any quarter:| but if those lands are sold for a sum which is insufficient to satisfy the prior judgments; the court, on the application of those prior judgment creditors, would refuse to confirm the sale, or to permit the sheriff to acknowledge the deed. It would not be sanctioned, that the security of a judgment creditor should be swept away by one who could have no beneficial interest in the sale, or in the fund produced by it.

Two fundamental principles may be laid down, which will form a rule to decide all possible cases that can arise under a sheriff's sale. The first, which has been long established, is, that any right, however small, may be sold in Pennsylvania, for the payment of debts.

The second is, that every rule of law and equity, applicable to a sale made by an individual, is also applicable to a sale made by a sheriff. Thus if one against whom there are several judgments, sells his land for more than the amount of such judgments, the purchaser will be justified in appropriating so much of the purchase money to their payment; and it will be payment of so much

(James B. M'Grew *v.* Matthew M'Lanahan and Simon Drum.)

to the vendor. If he does not thus sell, the law will interpose and sell for him, and direct the sheriff to do that which he himself might have done. If the purchaser would pay over the purchase money to the vendor, the lien of the judgments would remain; nor, if the purchaser at sheriff's sale neglects to see the money appropriated to the payment of prior judgments, will the sale, it is apprehended, discharge prior liens.

The case of a mortgage stands on stronger grounds, as respects the mortgaged property, than the rights even of a prior judgment creditor. It is considered as established law, that as between the mortgagor and mortgagee, the legal estate is in the latter, and the equity of redemption in the former. The right of the mortgagee to sustain an ejectment upon the mortgage deed, and recover the possession of the land, that the executing of a mortgage by one joint tenant, severs the joint tenancy; and other cases prove, that the common law construction and effect of a mortgage is recognized in Pennsylvania, and is unaffected by the remedy afforded by our statute.

What more can be levied on a *fi. fa.* than the equity of redemption? It is all the right, title, interest and claim, of the defendant. Could he sell more by private sale, or would any thing more pass from him by any deed he could make? And, it may be asked with great confidence, can the sheriff sell any greater estate than the defendant had?

This question arose in the case of *Patterson* for use v. *Sample,* 4 *Yeates* 308. There the mortgage was recorded 13th March, 1801, more than six months from its date, but before the judgment, which was entered 14th November, 1801. The mortgaged land was sold under a judgment for eight thousand dollars. An application having been made to the supreme court on appeal from the circuit court, that court expressly declared, " that the mortgagee had a plain simple remedy, by proceeding in the usual way on the mortgage." This decision cannot be misunderstood; and if it is authority, is conclusive of this cause, unless the circumstance of the judgment upon which the land was sold, being obtained upon a bond which was secured by the mortgage, should alter the case: and it is not easily discoverable how that can be.

In *M'Call* v. *Lenox,* 9 *Serg. & Rawle,* 308, the present C. J. expressly says, if the mortgagee "proceeds as a judgment creditor on the bond, he may instantly have execution of the mortgaged premises, *to the extent of the equity of redemption.*" And *Duncan,* J. was of opinion, "that when there was a judgment for one entire debt, secured by a mortgage, and the mortgaged premises sold, the purchaser acquires all the title of the mortgagor:" yet he excepts from this general doctrine, the case of several bonds, given to the same person, secured by the same mortgage. The plaintiff is therefore not without authority on his side. In the case of *Lenox* v.

(James B. M'Grew *v.* Matthew M'Lanahan and Simon Drum.)

*M'Call,* judge *Duncan* says that the case in 11 *Johns. Rep.* 462, *Jackson* v. *Hall,* where the land sold for seventy dollars, and had been mortgaged for seven hundred dollars, was determined upon principles of strict law, arising from the disparity of price and real value. But how dangerous it would be to render the law thus uncertain! If any weight ought to be attached to such a circumstance, it would apply with its fullest force to this case, where the land was sold for less than one fourth its value. The authority of the case in 11 *Johns.* is not in any degree shaken by the case in 2 *Johns. Chan. Rep. Tyer* and *Aiken* v. *Anon;* it is, indeed, confirmed. It is true the chancellor intimates certain supposed inconveniences that may arise from the sale of an equity of redemption; yet in that case, although the land was levied on, and not the equity of redemption by express terms, he considers it nevertheless as only the equity of redemption, and decrees accordingly: and the suggestion that he might hereafter issue an injunction to prevent the sale of the equity of redemption, (from its supposed injury) would apply as well to a case where, in express language, the equity of redemption was levied on, as where it followed from natural and legal construction.

The acts of Assembly in relation to sales under judgments, only give such title to the purchaser as the defendant had at the time the judgment was obtained; and the circumstance of its having been obtained upon a mortgage bond, can not alter the law. In the argument of the case of *Bantleon* v. *Smith,* 2 *Bin. Rep.* 146, Mr. *Hopkinson* and Mr. *Rawle* say, "it is analagous to the case of a bond and mortgage, in which an execution and sale, *under the bond, has never been supposed* to extinguish the plaintiff's lien."

*J. B. Alexander* for appellees.

The opinion of the court was delivered by

Smith, J.—The question which is presented for the decision of this court is; whether the purchaser of the land, sold under the *levari facias,* issued on the judgment obtained on the *scire facias* on the mortgage, for several of the instalments due on the land, can recover in an ejectment, the possession of the land from the mortgagor and the purchaser of the same land, sold to him by the sheriff, under an execution issued on a judgment, obtained in the action brought to recover the amount of one of the bonds, the payment of which was secured by the same mortgage, when the said judgment had been obtained, execution issued, and the land sold, *before action was brought, or judgment rendered,* on the mortgage for said subsequent instalments.

At the circuit court held last August by justice Huston, for the county of Westmoreland, he instructed the jury, that the sale of the land, on the judgment in the suit on the bond, extinguished the right of the plaintiff to sell the same land again, on the mortgage: that *Simon Drum,* the purchaser at the first sheriff's sale, bought the

(James B. M'Grew *v.* Matthew M'Lanahan and Simon Drum.)

estate, and held it freed and discharged from this mortgage, and that the last sale to the plaintiff was void, and vested no interest in him. The jury found, accordingly, for the defendants, and from this decision the plaintiff appealed to this court.

In the case of judgments, it certainly has been an ancient practice, and is now a settled rule, for the sheriff, when land has been sold by him on a judgment, to appropriate the money proceeding from the sale, to existing liens, according to their priority, and to convey to the purchaser, a title free from incumbrances. See 1 *Bin.* 97. 3 *Bin.* 358. 1 *Serg. & Rawle*, 320. 7 *Serg. & Rawle*, 290. 14 *Sergt. & Rawle,* 257. In the case of *Nicholls* v. *Postlethwaite*, 2 *Dall.* 131, decided at a court of *Nisi Prius*, at Carlisle, the court even directed *legacies*, charged on the land of the defendants, by his devisor, to be paid. And the case of *Gurney's Executor* v. *Alexander*, 14 *Sergt. & Rawle*, 257, clearly goes to establish the principle, that not only judgments against the defendant, but judgments against his vendor, which were a lien on the land, should be paid out of the money arising from the sale of the defendant's land.

The case of *M'Call* v. *Lenox*, 9 *Serg. & Rawle*, goes far to decide the present question. In that case, chief justice *Tilghman* remarked upon the practice in this state, to sell land for its *full value, without regard to liens*, and apply the proceeds of the sheriffs sale, to the discharge of liens according to their priority. And in a case of *Glass* v. *Gilmore*, decided by this court in Lancaster, at May term, 1829, and not yet reported, justice *Rogers,* in delivering the judgment of the court, said, " as respects sales, made by the sheriff, it has been already decided, that the lien of judgments, and even legacies, charged on lands are divested; that the judgment creditor and legatee, must look to the sheriff for their money, as the purchaser is not bound to see to the application of the purchase money."

But it is contended, that the rights of a mortgagee, stand on higher grounds than those of a prior judgment creditor. I confess I cannot see why they should; nor have they, in adjudged cases on this subject, been so considered. Although mortgages *in form* are conveyances of lands, yet *in substance*, they are only securities for the payment of money; and the debt being once paid, or extinguished, the mortgage is considered as at an end. Between the mortgage and the bond, there is, as judge *Duncan* expresses it, an inseparable union; the bond is |the principal, the mortgage an incident to it, incapable of existing without the debt, of which the bond is the original security. How then, when the land is sold for the very debt secured by the bond, can the rights of mortgagees be considered as standing on higher grounds, than the rights of prior judgment creditors? The bond and mortgage are securities for one and the same debt, to recover which, the mortgagee has three remedies; he may proceed by ejectment, and recover the premises; by *scire facias* on the

(James B. M'Grew *v.* Matthew M'Lanahan and Simon Drum.)

mortgage, or on the bond, by an action of debt; if he proceed by *scire facias*, or by action of debt, on the bond, he may recover the debt by a sale of the land. The mortgagee has his election to proceed in either way, and having seen proper to proceed on the bonds, or one of them, and have the land sold, the very substance itself, it would be wholly incongruous and unjust, to permit him to proceed to a second sale on a *scire facias*, of the same substance. Such double proceedings are incompatible, and repugnant to the spirit and policy of our law. The land cannot be twice sold. If by this proceeding on *one* of the bonds, the mortgagee has been injured, or a loss has been sustained, it is his own fault, by not proceeding directly on the mortgage; to prevent injury to others, the mortgagee must so deal with his security, as not to work injustice. These principles have been established by former decisions, particularly that in the case of *M'Call* v. *Lenox*, 9 *Serg. & Rawle*, 302. But the question was put at rest by this court, at the last session at Sunbury, in June, in the case of *Millard and Adams* v. *Norris*. In that case, the land had been sold by the sheriff, without any reservation or mention of incumbrances. The question was, whether a purchaser at sheriff's sale, under a judgment, held the land freed and discharged of the lien of a mortgage, prior to the judgment; and it was decided that in this state, the usage had been, if there was not an express reservation, that the title and lien of a prior mortgage were divested, and extinguished by a sheriff's sale of the land on a younger judgment. The opinion delivered in that case, by Justice *Tod*, entered into a full examination of all the cases. We are, accordingly, of opinion, that the decision of the circuit court was right, and that the judgment be affirmed.

Judgment affirmed.